to our fourth case on the calendar, that's Mandala and Garnett versus NTT Data. Yes, of course. We just have some folks coming in, so let's just let everybody get a seat, get comfortable, and then we'll start. Mr. McNerney, I think you're going to go for seven, and then Ms. Burgess is going to do the rebuttal. Is that correct? For three minutes. Correct, Your Honor. All right. I think we're all set. You may proceed. All right. Good morning, Your Honors, and may it please the Court. Christopher McNerney for Plaintiff's Appellants. This case presents extraordinary circumstances that warrant relief from judgment to allow the filing of a first amended complaint in this action. Plaintiffs have provided allegations that could state a plausible claim. But, I mean, let me just cut you off for a second. I mean, what's extraordinary is what? That there was a dissent or that there was a minority of judges who thought that, as originally pleaded, this was sufficient. And, therefore, when that's the case, you get a 60B6 motion, because that's extraordinary? Your Honor, I think that that is part of the procedural history that matters here. But what is extraordinary primarily is that plaintiffs have potentially meritorious plausible claims and would be left without a remedy absent relief. But that happens all the time, right? I mean, people fail to plead properly in complaints all the time. And it may be that a year later or two years later, they figure out that they've got other things that they could have included. But if they didn't include it the first time around, that would generally be considered to be a mistake. And that would put you in 60B1. Well, Your Honor, I think, as to the extraordinary circumstances part, that's LeBlanc v. Cleveland. That's Ninn. That is cases focusing on the fact that being left without a remedy is extraordinary. Here, and in addition, it's not a mistake, because the district court's standard was much narrower and specifically focused on the requirement that plaintiffs rejected the idea that plaintiffs could meet their burden with general statistics. And that's what this court clarified and stated definitively applying black letter law on appeal, saying that you could meet your burden with general statistics if they're sufficiently tailored to the applicant pool. And that's precisely what we've done now. And that's what we could not have done before the district court based off of the court's opinion. I mean, I'm not sure that that's true. The majority, if we focus on the majority opinion, it said basically that it's long been the case that we recognize that general national statistics are not going to cut it unless you can establish that they are indicative of the applicant pool that's at issue in the case. And that goes back for over a decade. So that's what the majority says, and it seems like that's what the district court said as well. Well, Your Honor, to be clear, we're not taking issue with the majority standard. We're saying that we have allegations to meet it. No, but I think looking at the- My point is that if you accept what the majority is saying, then it's hard to say that the failure to plead these additional facts was anything other than a mistake. A mistake puts you in 16B1, which has a one-year deadline. Well, looking at the district court's opinion, and this is in the analysis part, in contrast, the district court says, general statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions. So focusing on that, it was reasonable for plaintiffs to take that language and say that there was nothing that we could plead to meet our burden absent discovery because this standard requires discovery into the actual applicant pool, the actual disparities, which were unavailable to us. On appeal, this court applied well-established law. We agree. But that standard is not what this district court said, and that's why it was not a mistake. And I think more broadly- Well, the district court, I mean, just looking at the record, the district court basically said during the oral argument on the motion that statistics about how generally African Americans have more criminal convictions than Caucasians doesn't connect to necessarily whether the pool of candidates who have the qualifications for the positions that are being sought here. And I think that it seemed to me that the court was making the very point that the majority made, which is that you've got to tailor it to the applicant pool that is the focus of the complaint. Well, Your Honor, I think two responses are, one, Williams is clear that there is no obligation to seek amendment prior to judgment. That is not a basis to deny the post-judgment motion. So those statements, and I think looking at the language that the court actually quotes from the hearing in its Rule 60 opinion, I think it's very much focused on the actual disparities in the applicant pool and whether plaintiffs can provide that actual information. But putting that aside, the actual opinion, again, it says that general statistics are inadequate. And so I think at a minimum that was a reasonable decision by plaintiffs to take that language, which Judge Chin in his en banc dissent agreed that that was what the district court was saying, to take that language and view it that plaintiffs could not meet that standard. The standard of our circuit as of 2003 in Malave is that general population statistics are reliable surrogate only when there is reason to think that they accurately reflect the pool of qualified job applicants for the position in question. That's the, I guess, concurring opinion quoting Malave, which is a 2003 case. So is there any daylight between what the district court said and what we said in Malave? Well, I think the difference is that we agree. You need some sort of evidence that makes it plausible that there will be a disparate impact in this applicant pool. Absent discovery, you have to do that with some statistics that are not a one-to-one match with the applicant pool because you don't have that information. And the problem with what the district court did versus what Malave and what this court did was it said you couldn't use any of that information. The education level statistics that this court identified couldn't. The court said simply that you didn't plead facts that would make the statistics you were citing relevant because there's no connection to the applicant pool in this case. It didn't say that you couldn't have added statistics like the ones that were discussed in the amicus briefs, in the en banc briefing, or that were then referred to in the opinions of the dissenting judges and the concurring judges on the en banc. I mean, these were all facts that were available that certainly predate the district judge's decision, right? Well, I think that, yes, they did predate, Your Honor. But I think the two responses are, one, again, this language in the holding paragraph of the district court's opinion, which says you cannot use these precise types of facts. Two, the district court was focused on a narrower pool, specifically facts that could match the qualified applicant pool, whereas this court noted that it could be any sorts of information that could get over the line of plausibility, like education levels. The district court did not point to education levels. The district court doesn't have to point to things that maybe you could do if you wanted to make this a viable complaint. The district court just has to rule on what it is that you've presented and concluded that the general statistics relied on were not sufficient. You're saying that that should have signaled to you that there was nothing you could do? And it wasn't until then the circuit came in and explained what you could do that you realized that there was more? There were more national statistics that you might have relied on? Well, Your Honor, I think half of it is what the district court actually said, which Judge Chin agreed viewed in dissent and we reasonably believed, foreclosed our ability to use the precise types of statistics. The other part of it is looking now. Looking now, we now have, putting aside the district court's opinion, we have a plausible claim. We have not had a single chance to amend, and these are very- But you didn't seek to amend, right? Right, but William says that prior to judgment we had no obligation to- No, no, that's fine, but you didn't seek to amend. And if this is an error that the facts that you alleged or presented on appeal and in the en banc briefing had been added to your amended complaint, then you might have had a viable complaint. But the argument is that that's a mistake. That makes this then a 60B-1, which has a one-year deadline, right? Yes, Your Honor. I would say it's reasonable under B-6. Under B-1, it does have a one-year deadline. We do not think it was a mistake based off of the district court's opinion. We also think that neither the district court nor NTT have identified a single post-judgment request to amend case that fell under B-1. We've cited multiple cases falling under B-6 because that is the way that this is traditionally analyzed because the question is looking forward. Are there extraordinary circumstances for amendment? Amendment is a routine part of our civil process, as Your Honor knows, and the question is, is there something that can make it plausible? And I think the LeBlanc case is a very helpful illustration where it was at the eve of trial, the district court dismissed for maritime jurisdiction and the plaintiffs were out of court. They moved post-judgment to plead diversity jurisdiction instead. That could potentially, under the district court's argument, be considered a mistake. They pled a different form of jurisdiction that then the court decided that that actually did not meet the requirements. But the court focused instead on the extraordinary circumstances that these individuals would be left entirely without a remedy on the eve of trial when they had meritorious claims. And I think that is analogous to our situation here. But that's on the eve of trial. That's a very different case. But what I think is analogous is looking at the merits and the strong preference. Look, my concern is that if we're going to say it's an abusive discretion to not reopen the pleadings every time somebody has a potentially meritorious claim that they just didn't put the relevant facts into the complaint the first time around, then there's virtually nothing that isn't an extraordinary circumstance. Anybody who's basically saying I've got new facts that I want to allege is going to just be able to write 60 v. 6 into an amended pleading. Well, I would say first, as Williams suggests through the Metzler discussion, that ordinarily plaintiffs should be entitled to one opportunity at least to amend given the plausibility standard. That's what we're asking for, too. Two, I do not think that this is an ordinary case. We have the fact that we have everything we talked about about how these qualified black applicants alleging serious claims of racial discrimination as to a policy that defendants have been on notice since at least 1975. But the issue is was that pled and why wasn't it pled when the facts were available at the time of original pleading? And that is not that unusual. That does happen. People fail to plead the most relevant facts, which would have allowed them to get by a 12 v. 6 motion. And it is, I mean, this is an abuse of discretion standard, right? Yes, Your Honor, but that is consistent with the circuit in Williams and SAIC, albeit that was futility, so a different standard, overturning. And in Metzler, the court noting that wherever the line is, four bites of the apple is too much, but we are on the other side of the line. We are closer to Williams, one bite of the apple. And so I think that that's the difference. And just getting at the question of the statistics available to us, I think it is significant, the district court's language about general statistics. I think it is significant that the court gave no indication that evidence focused not on qualified applicants writ large, but just on education levels would meet the requirement. So it's extraordinary that the district court didn't tell you what you should have included in the complaint if you wanted to have a viable amended complaint? It's extraordinary? I think what is extraordinary is what I said about the lack, having plausible claims and having the lack of remedy. What I was pointing to was just whether we should have reasonably known to assert those allegations. And so I was getting at both what the court did and didn't indicate, and the fact that these allegations, it took three criminologists, so experts in this field looking through a book from another expert to figure out these statistics and provide them as part of the amicus process. Let me interrupt you only because you were way over. Yes, I apologize. I've been doing all the questioning. I want to just make sure my colleagues don't have other questions on their mind. All right. Well, you've got some time for rebuttal, or actually your colleague Ms. Burgess does, but we'll hear now from Ms. Polito. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Jacqueline Phipps-Polito of Whittler-Mendelson. You prefer Polito or Phipps-Polito? Polito. Phipps is the middle name. Thank you, Your Honor. No, you know that. I'm never sure. On behalf of NTT Data, in counsel's oral argument just now, multiple times we heard extraordinary circumstances and the allegation that these plaintiffs would be left without a remedy. That's just simply untrue because there is a pending state court action that was first filed in August of 2019 and then amended in March of 2021 to include the 2006 statistics. So this is not a case where the plaintiffs would be left without a remedy. Moreover, Judge, even talking about extra- They would be left without a federal remedy. They would be left without a federal remedy. Without a federal remedy. If they can plead that they're entitled to a remedy under federal law, then they ought to have the shot at that. Don't you agree? That's correct, Judge, but there is a pending state court action for which they may be able to pursue their claims. That is pending. The state court action is pending. You are correct that if this court denies their appeal, the federal court claims would be denied, but the federal court claims have already been denied. So setting aside the extraordinary circumstances argument that we got into and we got into the statistics, we need to step back. We've already been here before. This motion today, this appeal today, solely relates to whether or not District Court Judge Siragusa abused his discretion in denying the Rule 60 motion. That's what we're talking about. So first, they have to establish that they were not untimely. As the District Court said, they were untimely. Whether it was 60B1, 60B6, they were untimely in the application. What counsel chose to do is after the appeal to the Second Circuit in July of 19, they filed that complaint in state court. That's the course of action that they took. They filed a complaint in August of 2019 in the state court action. Then this court affirmed on September 21, 2020, Judge Siragusa's decision. So Judge Siragusa, in analyzing the entire procedural history, reached the conclusion that they were untimely, and that even if they weren't untimely, that's when we get into this discussion about do they meet the requirement of extraordinary circumstances, and the answer simply is no. Their entire argument is based on a dissenting opinion in the Second Circuit that suggested that statistical data might help with a repleting of the complaint. That judge didn't do a complete analysis of the case. He didn't analyze whether that would be timely. He didn't do any of that analysis. She. Go ahead, Judge. Judge Poehler. She. Judge Poehler. She. Apologies. She didn't do that analysis. She just said there might be a basis for relief to replete, and that was it. The reality is there isn't a basis in this case for relief to replete. There's no showing of extraordinary circumstances. That 2006 statistical data, whether or not it actually makes these particular allegations viable, is a separate issue, but that was available before the complaint was even filed in 2018. So there's no excuse here. There's no showing of an excuse. There's no showing of extraordinary circumstances, which would warrant this court finding that Judge Siragusa abused his discretion in denying the Rule 60B motion. That's what we're talking about here. It's a very high standard. We believe that Judge Siragusa's decision was accurate. We do not believe that this court should overrule and find that he abused his discretion, finding that it was both untimely and both that plaintiff did not meet the requirements of extraordinary circumstances. If there's no questions, we will rely on our brief. Okay. Thank you very much. And that leaves us, then, to Ms. Burgess for three minutes of rebuttal. May it please the Court, Tiffany Burgess for the plaintiffs. I want to first address the question you raised, Judge Sullivan, about whether this case involves a mistake. Importantly, the district court held on page 6 of its order that general population statistics are inadequate to show a disparity in the qualified applicant pool. That order also relied on the case that you raised, Judge Sullivan Malawi, which is a summary judgment decision at the pleading stage. In terms of whether or not it's appropriate to construe plaintiff's actions as a mistake, I think it's important to understand that plaintiffs viewed amendment under the terms of the district court's order as futile. And the choice to appeal, given the district court's proclamation of the insufficiency of general statistics and its reliance on a summary judgment decision, shows that the choice to appeal was perfectly reasonable under the circumstances. But we affirmed it. I mean, we affirmed the district court's decision. You did affirm it. It's a split decision. I get that. But I mean, so I'm not sure. The extraordinary circumstance is that the district court didn't suggest or draw a roadmap for how you might do an effective pleading? No, Your Honor. And importantly, this court did affirm it, but on a somewhat different basis. You went very far out of your way, Judge Sullivan, particularly in your concurrence to the denial of free hearing on Bonk, to clarify that you can use general population statistics as long as you allege a link between those statistics and the qualified applicant pool. And that is different from what the district court said. And regardless of the sort of objective answer to the question of whether amendment would have been futile, the point is more that plaintiff's course of action was perfectly reasonable under the circumstances. And to address the question about extraordinary circumstances, I think the point of the extraordinary circumstances threshold is not really to identify unusual facts. It's really to explain why it is unjust to uphold the judgment. And it's also important to keep in mind that the purpose of Rule 60 in the first place is to promote adjudication on the merits. And in this case, absent relief under Rule 60 will be left with a class action title. Why do you say that that's the purpose? I mean, there are provisions in there that say if you're more than a, part of the rule says if you're more than a year late, you're out of luck completely. Well, that's under B1, Your Honor. Under B6, the timing is- My point is that I don't think to say that the purpose of the rule is to promote adjudications. It's to balance finality and the need in certain extraordinary cases to allow further adjudications on the merits. Yes, Your Honor. And what we argue is that when you balance finality and the interest of justice in this case, in light of the strong preference for adjudication on the merits, the balance firmly comes out in favor of allowing the plaintiffs a first opportunity to amend their complaint, particularly when you keep in mind there's no prejudice whatsoever to NTT by allowing amendment in this case. I see that my time has run out. If the Court has any further questions- This hasn't stopped us in a lot of other cases, but let's see if my colleagues have any questions. No? All right. Thank you, Ms. Burgess. Thank you. We will reserve decision. Thank you all. Thank you.